WEAVER, J.
(dissenting). I respectfully dissent from the majority opinion’s holdings that the “insurance policies are subject to the same contract construction principles that apply to any other species of contract,” and that “unless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written.” Ante at 461.
In so holding, the majority is eliminating over five decades’ worth of precedent that created specialized rules of interpretation and enforcement for insurance contracts. These specialized rules recognize that an insured is not able to bargain over the terms of an insurance policy; indeed, it is common practice for the *517 insured to receive the actual terms of the contract, the insurance policy itself, only after having purchased the insurance. Further, in most cases the average consumer will not read the policy; the consumer will rely on the agent’s representations of what is covered in the policy. Even if the insured were to read the policy, insurance policies are not easy to understand and contain obscure provisions, the meaning of which requires legal education to grasp.
The longstanding rules that the majority does away with by stating that insurance contracts are to be interpreted in the same way as any other contract include:
• Courts must interpret insurance policies from the perspective of an average consumer. The contract must be read using the ordinary language of the layperson, not using technical medical, legal, or insurance terms.[1] By contrast, the usual rule of contract interpretation is that “technical terms and words of art are given their , technical meaning when used in a transaction within their technical field.” 2 Restatement Contracts, 2d, ch 9, § 202, p 86. See also Moraine Products, Inc v Parke, Davis & Co, 43 Mich App 210, 213; 203 NW2d 917 (1972).
• If reading the contract one way provides that there is coverage, but reading it another way provides that there is not coverage under the same circumstances, then the contract is ambiguous and must be construed against its drafter and in favor of coverage.[2] This is *518 different from general contract law, which finds a contract ambiguous “if its provisions may reasonably be understood in different ways.” Universal Underwriters Ins Co v Kneeland, 464 Mich 491, 496; 628 NW2d 491 (2001). (Emphasis added.) The “reasonableness” requirement can be a severe limitation on finding an ambiguity.
• If a limitation on coverage is not expressed clearly enough to inform the insured of the extent of coverage purchased, the provision is construed against the drafter, the insurance company.[3]
• In interpreting a policy, exceptions to general liability are to be strictly construed against the insurer.[4]
• The contract of insurance may include not only the written policy, but also the advertising and the application.[5] The general rule of contract interpretation, in *519 contrast, is that "[a]bsent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement.” Universal Underwriters, supra at 496.
These specialized rules of interpretation protect the consumer buying insurance, especially no-fault insurance, which every automobile owner is required by law to purchase; they should not be so lightly swept aside with no discussion and without regard for five decades of precedent. For these reasons, I dissent and concur in the result of Justice Kelly’s dissent.

 “Insurance policies should be read with the meaning which ordinary layman would give their words.” Bowman v Preferred Risk Mut Ins Co, 348 Mich 531, 547; 83 NW2d 434 (1957).

 An ambiguity in an insurance policy is broadly defined to include contract provisions capable of conflicting interpretations. Auto Club Ins Ass’n v DeLaGarza, 433 Mich 208, 214; 444 NW2d 803 (1989).
*518 “If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage.” Raska v Farm Bureau Mut Ins Co of Michigan, 412 Mich 355, 362; 314 NW2d 440 (1982).

 When an insurer “has failed to clearly express a limitation on coverage so as to fairly apprise the insured of the extent of the coverage purchased, it is appropriate to construe the provision under consideration against its drafter.” Auto Club Ins Ass’n v DeLaGarza, 433 Mich 208, 214-215; 444 NW2d 803 (1989).

 Technical constructions of insurance policies are not favored and exceptions to the general liability provided for in an insurance policy are to be strictly construed against the insurer. Francis v Scheper, 326 Mich 441, 448; 40 NW2d 214 (1949). Exclusion clauses in insurance policies are construed strictly against the insurer. Century Indemnity Co v Schmick, 351 Mich 622, 626-627; 88 NW2d 622 (1958).

 Where the advertising and the application stated that the policy would be in force as soon as the application and $1 for the first month’s premium was received, but the policy was not issued until 18 days later, *519 the Court held that the advertising and the application created an ambiguity about when the policy should go into effect. The Court construed this ambiguity in favor of the insured, stating:
If there is any doubt or ambiguity with reference to a contract of insurance which has been drafted by the insurer, it should be construed most favorably to the insured. Under that rule the application and advertising in the case before us must be construed most favorably to the insured. We construe this to mean the policy would be in effect without delay. [Gorham v Peerless Life Ins Co, 368 Mich 335, 343-344; 118 NW2d 306 (1962) (citation omitted).]